IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LATASHA N. FORD, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 20-cv-1229 |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    May 6, 2021

    Plaintiff, Latasha Ford, brought this action seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83 (the Act). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Brief and Statement of Issues in Support of Request for Review (ECF No. 21) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I.  PROCEDURAL HISTORY

    Plaintiff protectively filed an application for SSI on October 31, 2016. (R. 19). Plaintiff alleged disability beginning on July 21, 2016, due to obesity, depression, status post thrombectomy, and bipolar disorder. (R. 21). Plaintiff's application was initially denied on March 6, 2017, and she requested a hearing from an Administrative Law Judge (ALJ), which occurred on October 1, 2018. (R. 19). Plaintiff, represented by an attorney, appeared and testified at the hearing, as did an impartial vocational expert (VE). (R. 19). On December 26, 2018, the ALJ issued a decision denying benefits under the Act. (R. 19-29). Plaintiff requested

review of the ALJ's decision, and the Appeals Council denied her request on January 6, 2020, making the ALJ's December 26, 2018 decision the final decision of the Commissioner. (R. 1–7).

Plaintiff, represented by counsel, filed a complaint in this Court on March 20, 2020 (ECF No. 2), and submitted a Brief and Statement of Issues in Support of Request for Review on December 24, 2020 (ECF No. 21). The Commissioner filed a Response on February 21, 2021 (ECF No. 26), and Plaintiff filed a Reply on March 18, 2021. (ECF No. 30). The parties have consented to my jurisdiction over this matter. (ECF No. 6).

## II.  FACTUAL BACKGROUND[1]

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on April 7, 1975, making her forty-one years old as of October 31, 2016, the date her application was filed. (R. 27). This places her in the category of a younger individual, age eighteen to forty-nine. *Id.* She has no history of past relevant work. *Id.*

Plaintiff claimed she was unable to work due to residual effects of a stroke status post (s/p) thrombectomy of the left internal carotid artery; s/p parotidectomy for cancer of the right parotoid gland; obesity; depression; and bipolar disorder. (Pl.'s Br., ECF No. 21, at 3).

### A.  Medical Evidence

Plaintiff initially sought outpatient mental health treatment with Wedge Recovery Centers on July 8, 2016, reporting outside stressors, racing thoughts, and assaultive behavior. (R. 26, 424–25). Plaintiff stated that she had previously been medicated for depression and "possible"

---

[1] Plaintiff asserts disability based on physical and mental impairments. However, her only allegations of error involve the ALJ's determinations regarding her mental impairments. Accordingly, while the Court has reviewed the voluminous administrative record in its entirety, this Report and Recommendation focuses only on those portions of the record relevant to Plaintiff's instant claims.

bipolar disorder, but had stopped taking her medication. (R. 517). Plaintiff was neatly dressed, pleasant, and oriented during this evaluation. (R. 436). The examining clinician recommended that Plaintiff engage in weekly counseling with monthly medication management. (R. 438).

During another evaluation on July 13, 2016, Plaintiff presented with a depressed/sad mood/affect. (R. 442). She was appropriately attired, her speech was normal, and she was able to follow normal, logical, and goal-directed thought processes. *Id.* Her insight and judgment seemed fair, and her memory was fair. *Id.* She was diagnosed with unspecified bipolar disorder, and prescribed Latuda and Benadryl as well as weekly outpatient therapy. *Id.*

On August 14, 2016, Plaintiff underwent an initial psychiatry consultation at Einstein Healthcare Network. (R. 661). During this evaluation, Plaintiff was calm, cooperative, and responsive, maintained good eye contact, and seemed in good spirits. *Id.* She displayed intact short- and long-term memory, as well as good attention/concentration. *Id.*

On November 15, 2016, Plaintiff received an updated therapy treatment plan from Wedge Recovery Centers. (R. 508–10). While meeting with her therapist, Plaintiff reported symptoms of bipolar disorder including mood swings, crying spells, low frustration tolerance, "fear of life," angered outbursts, lack of motivation to engage in daily activities, wanting to isolate herself, and sleep/appetite disturbance, rating the intensity of these symptoms at a 9/10. (R. 508). Plaintiff's treatment plan was again updated on March 28, August 29, and December 19 of 2017, and on April 9, 2018. During these updates, Plaintiff reported ongoing bipolar symptoms, including isolative behaviors occurring five days a week at 7-8/10 intensity. (R. 505, 502, 503, 500, 497).

On February 22, 2017, Dr. Frank Mrykalo, the state agency psychologist, reviewed Plaintiff's treatment records and opined that Plaintiff's bipolar disorder did not meet Listing 12.04. (R. 185–86). Dr. Mrykalo found that Plaintiff had moderate limitations in interacting with others and maintaining concentration, persistence, or pace. (R. 186).

B.     **Lay Opinion Evidence**

On October 1, 2018 Plaintiff testified at her administrative hearing. (R. 37). Plaintiff reported racing thoughts and panic attacks as well as trouble getting out of bed multiple days per week. (R. 49, 52). Plaintiff stated she experienced memory problems and trouble concentrating, and that getting out of bed to make it to a job would be a challenge for her. (R. 53–54).

In her Function Report, Plaintiff stated that her depression keeps her from applying to jobs, and reported trouble sleeping and generalized fear something bad will happen when she goes out. (R. 333, 334). Plaintiff also wrote that her depression has impacted her ability to socialize because she generally thinks negatively of people. (R. 339). She reported having trouble focusing and following instructions, and stated that she does not handle stress or change in routine well. (R. 339, 342).

## III.    LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the

> residual functional capacity to perform [her] past work. If the
> claimant cannot perform [her] past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at step five to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience and residual functional capacity.[2] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.	ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled. (R. 21–29). The ALJ made the following findings:

1.	The claimant has not engaged in substantial gainful activity since October 31,

---

[2] Residual functional capacity (RFC) is defined as "that which an individual is still able to do despite the limitations caused by [her impairments]." 20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

5

2016, the application date.

2. The claimant has the following severe impairments: obesity; depression; status post (s/p) thrombectomy and bipolar disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(a) except she can occasionally climb ladders ropes and scaffolds, ramps and stairs, stoop kneel, crouch and crawl but frequently balance. Mentally she is limited to simple routine tasks in a stable environment defined as relatively few changes throughout the work day; she can have occasional interaction with general public coworkers and supervisors.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on April 7, 1974 and was 41 years old, which is defined as a younger individual age 18–44, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 31, 2016, the date the application was filed.

(R. 72–79) (internal citations omitted).

Accordingly, the ALJ determined that Plaintiff was not disabled. (R. 29).

## V. DISCUSSION

In her request for review, Plaintiff raises one claim: that the ALJ erred by failing to consider five therapy treatment plan updates from Wedge Recovery centers, and that this error impacted both the ALJ's step three and RFC assessments.[3] (Pl.'s Br., ECF No. 21, at 5–12, 13–14). The Commissioner responds that the medical record and Plaintiff's hearing testimony support the ALJ's listing and RFC determinations, and that the ALJ is not required to discuss every part of the medical record to support her findings with substantial evidence. (Resp., ECF No. 26, at 2). I find that the ALJ should have addressed the therapy treatment plans identified by Plaintiff in her decision.

An ALJ has an obligation "to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). The ALJ must provide "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected." *Id*. at 705. This is necessary so that a reviewing court is able to understand the basis

---

[3] Plaintiff's Brief and Statement of Issues in Support of her Request for Review states as her first claim that the ALJ's finding at Step Four was proper, thus shifting to the Commissioner the burden of showing that she could perform other work within her RFC. (ECF No. 21 at 3). However, Plaintiff's evidentiary support and argument for the claim that the Commissioner did not ultimately carry his burden resides exclusively in her second claim. *Id.* at 5 ("The Commissioner has clearly failed to carry his burden for the reasons detailed *infra*."). Therefore, this count does not represent a distinct claim such that this Court could address it separately, and as such only Plaintiff's second claim will be discussed.

of the ALJ's decision, and determine whether the decision was proper. *Id*. at 707. An ALJ's failure to address evidence in direct conflict with her findings, or to reject uncontradicted evidence without a clear statement of the reasoning, is erroneous. *Id*.; *see also Fargnoli*¸ 247 F.3d at 41-42.

In this case, the ALJ's decision indicates that, while she considered the mental health evaluations conducted by Wedge and Plaintiff's monthly medication management sessions (R. 26), she did not consider Plaintiff's weekly therapy sessions as outlined in the therapy treatment plans. This is indicated by the ALJ's statement that "[t]here is no other evidence of formal mental health treatment beyond medication management. In fact, [Plaintiff] has rarely presented for depression or bipolar disorder." (R. 26). This statement indicates a failure to consider Plaintiff's weekly therapy sessions, which lasted from late November 2016 to April 2018, as formal mental health treatment. Further, Plaintiff cannot be said to have presented only "rarely" for depression or bipolar disorder if her weekly therapy sessions focusing on those exact impairments were indeed considered. Because of the ALJ's failure to acknowledge and/or discuss Plaintiff's therapy treatment, it is impossible for this Court to determine whether the therapy sessions were not credited by the ALJ or were simply ignored. *See Cotter*, 642 F.2d at 705.

The Commissioner argues that the therapy treatment plans are not substantively helpful to Plaintiff because they merely record Plaintiff's subjective problems and therapy goals. (Resp., ECF No. 26, at 10). Plaintiff counters that these therapy plans corroborate Plaintiff's statements that she isolates herself for five days a week, and that they therefore provide evidence that she has a marked impairment in "interacting with others." (Pl.'s Br., ECF No. 21, at 12). In fact, the ALJ should have determined the credibility and/or probative value of this evidence in her decision. It is the ALJ's responsibility to weigh the credibility of the evidence, and she must

8

give some indication of the evidence which she accepts or rejects and her reason(s) for crediting or discounting such evidence. *See Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). While the ALJ explained why she rejected Plaintiff's other subjective statements regarding her condition, by failing to address the therapy treatment plans, she did not adequately explain whether she accepted or rejected Plaintiff's specific contention that she isolates herself on average five days a week.

Accordingly, I find that the ALJ erred by failing to consider the therapy treatment plans identified by Plaintiff, and that remand is appropriate to address this issue.

## VI. CONCLUSION

For the reasons set forth above, I find that the ALJ erred by failing to consider the therapy treatment update plans identified by Plaintiff in her decision. Accordingly, Plaintiff's Request for Review is **GRANTED** to the extent that it requests remand. This matter is remanded to the Commissioner for further proceedings.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge